Good morning. May it please the court, counsel. I'm Steven Spurgeon from Marfa, Texas. I'm the lawyer for Hilda Brenes, your petitioner. Thank you for the opportunity to appear before you today. When I first received notice that this case was going to be heard for oral argument, I had intended to use the quotes of a prior immigration judge that heard this case of the acts of astonishing baselessness and depravity that the judge used to describe the pre-puberty rape of Hilda Brenes, her sister, her pregnant mother who lost the baby, and the battery acid that was poured on her siblings' feet and scalded them by the soldiers of Daniel Ortega, the dictator of Nicaragua then and now. That changed this Monday when I received the case of Mendoza-Flores from counsel in the Rule 28 J letter because I had intended to speak to the court about not only these atrocities that took place but the legal issue on the res judicata issue that the second immigration judge made to say that none of these acts that the judge made were in violation of the federal regulations. I had intended to talk to the court about the board's treatment of the issue of the res judicata and the immigration judge's and board's complete and total failure to consider the gross flagrant and mass violations of human rights within Nicaragua as required under section 1208.16c including the expert report of Dr. Karen Kampworth which wasn't considered at all with respect to her evaluation and her opinion to the court on the dangers and the torture that my client faces if she's returned to Nicaragua. I call to your attention page 270 paragraph 33 of the administrative record with respect to Dr. Kampworth's opinion who is one of the premier authorities on Nicaragua in this country. But on Monday my position changed because now we need to address jurisdiction and movements. I just want to say you should address both. I mean you've already addressed some of the merits but the oral argument will address both so you are not limited to the jurisdictional question in your argument. I understand. Address the merits and cover everything you want to cover because you've driven a long way to talk to us. You want to hear everything you have to say. I have driven a long way judge. The uh but the court's read the briefs. The court knows the facts. The court knows what this lady went through. The court knows how the immigration court cherry-picked the record to pick what they wanted to pick. The court's familiar with the things that took place with the with how when you become when you get fondled by an officer of Daniel Nicaragua when she's returned to Nicaragua in 2011. They're fondled. She's threatened with rape. She has to pay money. She strip searches, bobbity cavity searches. She's put in detention. She's detained and she's threatened with detention and she's passed a pair away at the court's familiar with that. The immigration judge referred to it as the rogue agent analysis that this court has already frowned upon and and my reply brief addressed a case that's that's where our attorney general has the rogue agent doctrine doesn't apply and it agrees with this court. The court has that. I think the real emphasis has to be the jurisdiction. Because none of this matters. None of what I've told you matters. If this court didn't have jurisdiction to fix fix this. So how do you distinguish Mendoza-Flores? I'm not sure it's distinguished. My client is a convention against torture case. Mendoza-Flores was a contention against torture case. Neither of them asked this court for a stay of removal. I don't think you can distinguish between the law the court used to make that decision and with all due respect with Judge Haynes and Judge Odom who who were on that panel. I believe with due respect to this court that perhaps it wasn't decided correctly and here's why. I think we have to begin with Nikin versus Holder which is the 2009 Supreme Court case that dealt with the issue of the stays of removal and what kind of proof was necessary in order to get a stay of removal from the court and as this court knows the Supreme Court focused and said the two most important issues was whether the applicant can make a strong showing that you're likely to succeed on the merits but equally if not more important you have to show irreparable harm and in the Nikin versus Holder case I believe it's twice the uh I believe it's twice in Nikin versus Holder that Justice Roberts refers to this but I believe at page 434 or 335 of 556 U.S. Judge Roberts speaks about how aliens who are removed may continue to pursue their petitions for review and those who prevail can be afforded effective relief by facilitation of their return along with the restoration of any immigration status they had upon removal and Justice Roberts, Chief Justice Roberts cited to the government's brief at page 44 when he made that declaration in Nikin versus Holder. Why that's important your honors is it's this same theory in this same language that the Ninth Circuit used in the other case I cited in our in our response that we we quickly got off to the court and I I regret that I didn't spend more time on this and I regret that we didn't do more research. Well we're going to ask for more fulsome briefing because I agree that you didn't have much time and this is important but we wanted something from you so go ahead finish what you're saying. Well and I think I was I think I'm able to find the important part okay and because the the the split we have with the Ninth Circuit that was decided in 2016 focused on the Nikin versus Holder language and in particular the Nikin versus Holder the government made representations in their brief to the court that there's no irreparable harm to not stay somebody's deportation because we'll make a way for them to come back and that was in the government's brief at page 44 well in in the in the Ninth Circuit case and I got I always have a hard time with this name Sid Delcid Merakin versus Lynch in the Ninth Circuit case around page 936 of the opinion they go into a lot of detail about how they wanted the government and the parties to do further briefing on what would be the effect of them granting a petition for review in a convention against torture claim like ours where we didn't ask for where they didn't ask for respect. Do you not have an argument for on the suffering collateral legal consequences from the challenge decision issue? Well the suffering legal consequences your honor is that if the court grants the petition then she's got a way to she's got a way to return to the United States and the United States government will help facilitate that. How is that true if we granted if we agreed with every word of it we grant the petition exactly the way you want it she's still subject to the removal order because you never challenged that it just like in Mendoza Flores so that McKinn obviously involves a removal order in cases where there is a challenge to the removal order I get it I understand what you're saying but if you've never challenged the removal order there's nothing we can do our hands are totally tied. I understand I understand the court's position and the argument your honor but this is the difference. And I and I and I quote from the language that the parties briefed on and the Ninth Circuit spoke of in the Delta American case where they solicited a second round and the courts reviewed the case the court knows what what the Ninth Circuit asked the parties to do and the government states that the government stated that if the BIA if the immigrant if the circuit court should reverse the BIA and the BIA should either reverse it or send it to the immigration judge who who who finds in light that that convention against torture should be granted they would facilitate the person's return and the Ninth Circuit spoke to specifically in some while Granningdale's American's petition will not guarantee his return to the United States it will at least increase his chances of being allowed to do so. Well and I appreciate that point the question I think that I was asking so in Mendoza Flores it says there's not a mooting if the petitioner would suffer collateral legal consequences from the challenge decision i.e. the addressing right here today is there any such thing here in other words is there a collateral legal consequence to your client if the BIA decision remained in place? Well the collateral legal consequence your honor is being subjected to torture in Nicaragua which could be prevented by this court by remanding the case to the BIA to to to rule correctly on the law by stripping by stripping cat claimant's rights to ask a federal court of appeals to fix great injustices I mean obviously my client was convicted of an aggravated felony drug trafficking crime and lost her lawful permanent resident status as a result when we've returned to Nicaragua after the events that took place she returned to the United States and she was detained while she fought her immigration case at the trial level and at the board of immigration appeals and then was removed so I mean I can't fix that removal order and and there's no way to challenge the removal I mean she was lawfully convicted and the law is very clear that if you're convicted of an aggravated felony drug trafficking crime you're subject to removal from the United States and you lose all the other ways you have to fix your papers save for the convention against torture this is it that's not quite right right because you could have filed a stay you have a petition for stay I mean we've talked about mckinn this morning that's worth the four factors and we see them every day and and it could have been done before she was removed in March of 2020. It's um I'm not going to make excuses on the difficulty it is to get this done on a short period of time with the clock ticking and not having all the access to some of the records we need but the the Supreme Court found in that Nican didn't grant this didn't didn't didn't okay that particular stay okay because there wasn't a reputable harm because the government promises we'll bring them back so I'm not sure why I'm asking this court why I'm asking this court to grant a stay reputable harm if you can't be brought back because of this whole Mendoza notion or the notion that without a collateral legal consequence you can't come back so I mean I don't know it's a little surprising to me to argue that because you don't think you'll win you don't file a motion for stay if that were true of everyone we'd get very few of them. I thought the Supreme Court had spoken there's no reputable harm because the government promises to bring them back all my client has to do is keep bringing back aggravated felony conviction people these are these promises to bring back I mean we have a ton of cases where the person was not removed because of some criminal event they were removed because they were um not authorized to come into the country they came into the country they didn't prove their asylum claim or sufficiently they didn't win let's put it that way and they were sent home that's what typically those cases are they're not typically these cases so I don't know that the Supreme Court was necessarily addressing every single case under the sun when it was addressing the government saying we'll bring them back because as I said in the most cases are not involving these kind of criminally convicted so on so forth people that are claiming cat they're typically people who came in here either lawfully and then overstated or did not have um authorization they were unauthorized and but claimed asylum well that's accurate but under our IRA congress congress has declared that these court that you that you have authority to to to consider petitions of review even after someone is removed from the country and that's what we have here congress didn't carve out an exception for special for people with aggravated felonies congress didn't carve out an exception to say well you know we think it's moot because because you didn't ask for relief from from for a stay of removal under our IRA the court has authority to consider petitions for review after somebody's been removed from the United States and that's let me ask you this what was the petitioner in in our uh in our case uh Mendoza Flores subject to the same uh contingent uh collateral consequence as your client I would I would say so you know we have to follow our authorities pardon me sir we have to follow our published decision of this that's that's I can't that's why I said I can't distinguish that I don't mean I can't and so Judge Davis I'm talking to you I think we've already got a decision here on the other part let me let me address this with you your honor congress didn't congress didn't didn't didn't delineate that they didn't carve out an exception and under our IRA to prohibit this court from considering this case or the one in Mendoza Flores and and there's a split in the circuits on it and and I haven't had a chance to check all the other circuits to tell you where they are okay your time's up and if and I'll you save time for rebuttal so you can have a seat I'll go ahead and take well judge I may I may waive rebuttal uh I think you'll want to stay to hear this well I want to hear it but I'm not sure it's gonna you want to get back in your car but let's let's go ahead and hear the other side's argument let me get the second moment to put your materials back all right counsel uh for the government may please the court while I look for the respondent the court can resolve this petition in one of two ways the court can dismiss the petition with in accordance to Mendoza Flores that appears to Raxion Quinn or the court can assume jurisdiction and deny this petition for reviewing the merits because the agency properly concluded that petition failed to meet her burden to be eligible for captive parole all right now I want to understand uh frankly I wasn't aware that she had been removed until you all wrote your letter and she was removed a year and a half ago why did y'all wait till this week when we were already here in oral arguments not really able to put it off to let us know that um I was uh assigned to this case after the briefing was already completed and when I started to prepare for the argument I realized that Mendoza Flores were just directly on point and I discovered it shortly before the argument when I started my so I did not realize that Mendoza Flores was directly on point until I started to prepare for for the argument and hence um I apologize it's it's really late notice I realized that yeah I do think we want to have more fulsome briefing on it I don't think it was fair to your opponent um that you know he's packing his bags in the car and having to run around trying to do this research on something that's very significant so I would ask that um let's 12th you file the appropriate motion on the jurisdictional point with full briefing and then uh your opponent will have the opportunity to respond under the time rules on motions I'd like to have an explanation in the brief for the delay too explanation for the delay yeah I mean I appreciate that you didn't know and whatever but it would like um y'all would have known she was deported and that would have been a question of something to raise somewhere in the briefing and then we would have at least right Mendoza Flores was decided after the briefing was already completed in this case so I believe it was in December 2020 and the briefing was completed here and I believe she'll buy it but I mean the fact that she'd been of interest given her claim that as soon as she walked in the door she would be harmed you know so I'm just surprised that wasn't even raised okay then as you say Mendoza Flores came out last year we get 28 jays the day after things get filed you know so I I just find this all a little bit confusing but the answer is okay we can't can't change the past but we still have to address jurisdiction whether we like the way it came to us or not so as I said by August 12th y'all need to file a fulsome motion with fulsome briefing and explain why you didn't let us know all about this sooner and then your your opponent will have the time under the rules to respond also more fulsomely and we'll go from there but in the meantime you can go ahead and address both the cover any statutory or regulatory authority for preventing the re-entry of a someone convicted of a violent felony is there statutory or regulatory authority for that but put that in your brief what would happen if she flew back or drove back kind of if she came to back to the United States yeah could she climb the cap then again um she she did in in this instance so I assume that that would be the case here again and that's where the document she should come back I'm just asking uh correct uh as the past indicates and this is why the document was an issue that the immigration judge decided um and again this is one of the reasons the court knows that even assuming the court can assume jurisdiction and decide the marriage realizing that it's the last minute at 28 jail other and so forth if the court so chooses to do um can we I mean I I thought jurisdiction subject matter jurisdiction I thought is something that can't be waived a lot of stuff can be waived and if it could be waived but how could this be waived the court can perhaps reach the merits assume and assuming jurisdiction in this case considering that there is already full briefing on the merits um and deny the petition um um based on the um I if the court wants I can uh go into the merits of yeah I know I definitely think you should I mean well why I mean here's the problem that I have with the ratio ducata argument I understand that she can't challenge that original decision but doesn't the history of her life give some understanding to what happened after that so even if you say the one rape or the issues that occurred before then weren't enough they're not irrelevant to the fact that she's again mistreated when she goes back right um correct the immigration judge considered the the past events for context he ultimately concluded that he is not able to relitigate the of what happened to her in the past in 1984 which is exactly the issue that she raised and litigated in a prior removal hearing uh before in in california uh in fact in the prior removal hearing what happened to her the harm she suffered the horrible harm that she suffered the question was whether that harm supports a finding of clear probability of future torture and the agency in that case ultimately decided that all the what she suffered to it was horrific it happened over 20 years ago and there was no other evidence otherwise to indicate that she would be singled out for her but she shows up at the airport and she's getting grabbed and you know mistreated at the airport right when we send her back why isn't that some evidence that she was right when she said i'm abused by these people um the immigration just did consider that in context ultimately not reaching uh the ultimate question of whether the 1984 events support the finding of future torture and in any event as the board also indicated even with notwithstanding the dress judicata issue what happened to her although horrific it happened over 20 years ago and did not uh alone support the finding of it did not support the finding of a clear probability of nicaragua um so even if asking the board noted even with the document for judicata didn't apply here similarly these events that happened over 20 years ago now over 30 years ago uh did not support the finding of clear probability of future torture based on these events and in presently nicaragua and um moving on uh let me ask you one other thing about that why wouldn't what happened to her uh 20 years ago or 30 years ago be a consideration in how credible she thought the threat was that she would be jailed and raped when she re-entered the country i mean wouldn't that wouldn't that tell her something about how credible that threat was um the immigration judge in a prior hearing uh determined that the events did not support their probability of torture the immigration judge in this case considered these events in context uh although um relying arrest judicata not ultimately uh deciding the issue whether these events supported the finding of clear probability of future torture but the even looking at all the evidence here um although what happened here was horrific over 30 years ago now um um it happened a really long time ago and the events that happened at the airport as the immigration judge noted although they were distasteful and frightening they did not meet the extreme level of torture and uh further look at they would it would be much closer to torture though if it was a credible threat wouldn't it in other words did she if she uh had every reason to believe that it was a credible threat i mean i think we've got a case saying that can amount to torture the immigration judge in this case uh considered the record evidence considered what happened here determined that although it was distasteful and frightening it did not raise the extreme level of torture the immigration judge looked at the fact that she was threatened twice upon detention at the border but she was released when she paid the extortion request or extortion money and that the immigration judge also pointed out that the commanding officer at the during the first incident actually indicated to her not to tell anyone about the incident indicating that he believed he could not act as he did with impunity the immigration judge also evaluated the expert witness expert witness testimony and ultimately concluded that on balance under the fatality of circumstances petition did not meet her burden that it is more likely than not that what i what i saw was that he didn't he didn't consider the you know and chris as i understand it was had the same kind of uh threat made and then been living in hiding so how does how did chris's statement undermine the experts uh testimony the immigration judge as the board noted looked at the record evidence i mean i know what the immigration right the immigration judge did look at the brother's declaration and the immigration judge noted that the brother did not indicate that uh he was in hiding after the events the noted that he was extorted because he was coming in essence he had connections to the united states and uh these officers believed that he had money and as a result he was extorted the brother did not indicate that he was uh in hiding indeed as the immigration judge pointed out um in his decision the brother also noted that he went to the authorities it seems recently based on the declaration and it was written in 20 other evidence i was able to get the police report sorry other evidence that he had been living in hiding since then um there was uh i believe um petitioner noted uh in her declaration that the brother was in hiding he found her testimony credible didn't he um yes she was not found uh incredible all right any other arguments um the court has any uh further questions for me i'll briefly conclude in conclusion the court can either dismiss the petition or deny it on the merits and as to the merits the agency here reasonably concluded that petitioner failed to meet her burden of proof to be eligible for captive parole um substantial evidence supports that agency's evidence that on its own is not sufficient to compel only a contrary conclusion so for these reasons and for the reasons stated in respondent's brief uh the court should deny this petition okay thank you well i missed about maybe maybe a few minutes and rebel i figured that uh before you get started um can i ask you a question did did you confer with your client before you filed your opening brief no you did not oh so when did you become aware that she'd been removed from the united states when well i guess when she she called us well i guess when she called shortly after the uh shortly after the board decision i'm i don't i can't give you an exact date your honor i bet we have it in a record somewhere in my office i don't i don't recall that date but it would be so she was removed in march 2020 sorry and you filed your opening brief on april 13th yes well we would we would have spoken but when we speak it's basically we have the record uh we're or if we have the record if we had the administrative record at that time we would we would talk about what the process is but did you know that she was not in the united states and had been removed by the united states yes i knew i knew when she got they tell us when they're leaving so you knew before you filed her yes her family uh your question is why didn't i put it in the brief yeah that's a good question i don't know i don't know why i didn't anticipate this jurisdictional argument i didn't perhaps i should have put that in my brief and alerted everybody to that fact but what one side at least knew before the briefs were filed that she wasn't here and it sounds like it was oh but your honor i can't that would be my point of course the government knew well i mean i'm not sure if it will we renew or not i mean that's that's i mean the government deported her right i mean the department of home security deported her and the question is why does the justice department not know that that's it sounds like we're gonna have briefing on that maybe we can also have briefing on why got it sure briefly judge davis you're correct there's no statute of limitations on rape and torture simply because it happened a long time ago may go to the weight of the testimony but it's not something that's kept out by race judicata particularly when the prior courts in california that heard the case didn't deny the convention against torture claim because there wasn't rape and torture they denied it because the immigration judge said that he didn't think there was a risk that she'd be harmed in nicaragua nobody in nicaragua was looking for and nicaragua did not have mass violations of human rights that's all in his opinion why did the immigration judge deny it in 2010 in this case into in our case i race judicata no no the first time why did they go in the first case denied it because the immigration judge said that there wasn't a risk of that they weren't looking for now this is way before she went back yeah they were it's not true let's read the record together well h2 38 of the record on appeal the reason it was denied is that acts of astonishing baseless and baselessness and depravity were not sanctioned by high-ranking officials in the army nor that political officials ordered knew about or condoned the abuse that's a verbatim quote from the record your honor that is a verbatim quote and that is also contrary to this court's this court's to rogue agents uh and the whole rate rogue agents analysis has now been discredited by all the other courts but if you look at page 239 of the judge's opinion and 239 of the record evidence the judge says she loses because the saddened district government isn't looking for her as a and then she talks about uh how they talk again about the rogue soldiers okay and they also talk about how how uh she wouldn't be harmed because the country reports in the record do not show human rights violations and that's absolutely opposite of what the situation was when she lost in the el paso immigration court with the mass human rights violations that the immigration judge in el paso didn't even reference in his opinion and the board of immigration didn't reference it in theirs either and so i i appreciate the passion the argument and everyone everyone agrees that that the facts are horrific but it's really important that we're honest about what the record says and what the record specifically says is there is no indication that the men who perpetuated the assaults are still alive active in the army that the current regime has any interest in the respondent or anyone in the family particularly as the father is deceased because this wasn't attributable to the government that's a totally different legal error that i haven't heard you mentioned today well you have to connect the horrible things that everyone agrees happened to the government we will in my i've i've got some authority will aside from that on the united nations and i think there's a persuasive threat came by the united kingdom on this here recently we'll start to also i didn't get a chance to put it in our brief but the rogue agent analysis this court has discredited and in addition very very briefly it is very important for the court judge odom it's important to understand that my client is the niece of the cardinal of the roman catholic church in nicaragua and that changes the picture too on her importance to daniel sent to daniel ortega and his government and his wife the vice president have declared war on the catholic church and that's also a circumstance that wasn't addressed by anybody in this case that's thank you judge thank you counsel thank you both sides we have your arguments the case is under submission although as i said i am ordering the motion to be filed and then you will file file the response within the time allotted in the rules but with that understanding um you all are excused and our next argument is my video so we will leave the courtroom and that is the last of our live oral arguments for this sitting and we appreciate the work of miss engelhardt and we appreciate y'all's arguments and thank you